**SANCHO, Treasurer of Puerto Rico, v. HUMACAO SHIPPING CORPORATION.**

No. 3506.

Circuit Court of Appeals, First Circuit.
Dec. 22, 1939.

William Cattron Rigby, of Washington, D. C. (B. Fernandez Garcia, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellant.

E. T. Fiddler, of San Juan, P. R. (Fiddler, Cordova & McConnell, of San Juan, P. R., on the brief), for appellee.

Before WILSON and MAGRUDER, Circuit Judges, and McLELLAN, District Judge.

MAGRUDER, Circuit Judge.

Humacao Shipping Corporation filed in the District Court of the United States for Puerto Rico a petition for a declaratory judgment, 28 U.S.C. § 400, 28 U.S.C. A. § 400, that certain taxes assessed against it by the Treasurer of Puerto Rico under authority of the Political Code, Section 297, were assessed in violation of the Fourteenth Amendment, Const.U.S.C.A., and Section 2 of the Organic Act of the Territory, 48 U.S.C. § 737, 48 U.S.C.A. § 737. The material portion of Section 297 provides, "That all personal property within or without Porto Rico shall be assessed to the owner thereof in the municipality in which he resides on the fifteenth day of January * * *." A demurrer to the petition was filed by the defendant, the Treasurer, and judgment for the plaintiff was entered on the pleadings.

From the allegations of the complaint it appears: that plaintiff is a corporation organized under the laws of Puerto Rico; that a quantity of raw sugar owned by it on the tax day, January 15, 1938, was assessed against it by the Treasurer for the purpose of personal property taxes for the fiscal year 1938–39 in the amount of $1,090,400; that plaintiff had purchased this sugar in parcels on board ship in Humacao, Puerto Rico, between April 14, 1937, and June 4, 1937, for the purpose of sale in continental United States; that immediately following the respective purchases, such sugar was shipped by plaintiff to New York, and on January 15, 1938, was held in warehouse in New York City, awaiting sale; that such sugar was never thereafter returned to Puerto Rico, but in fact was subsequently sold in the United States. It was alleged that on these facts the sugar had acquired "a permanent situs" outside of Puerto Rico and hence was not taxable to the owners in Puerto Rico.

The judgment of the District Court, now appealed from, held and declared, on the authority of Union Refrigerator Transit Co. v. Kentucky, 1905, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493, "that the defendant Treasurer of Puerto Rico is without power to assess for property taxation the aforesaid 363,338.6 hundredweight of raw centrifugal sugar mentioned in the bill of complaint, and that Section 297 of the Political Code of Puerto Rico should not be construed as permitting him to do so."

In Union Refrigerator Transit Co. v. Kentucky, supra, it was held that Kentucky could not impose a personal property tax on rolling stock owned by a Kentucky corporation, but permanently located in another state and employed there in the prosecution of the corporation's business. Some of the language in the opinion seemed to imply that chattels have to be physically within the boundaries of the state in order to be taxable there. Thus the court said (199 U.S. at page 204, 26 S.Ct. at page 37, 50 L.Ed. 150, 4 Ann.Cas. 493):

"It is also essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power. Not only is the operation of state laws limited to persons and property within the boundaries of the state, but property which is wholly and exclusively within the jurisdiction of another state receives none of the protection for which the tax is supposed to be the compensation. This rule receives its most familiar illustration in

the cases of land, which, to be taxable, must be within the limits of the state."

But in Southern Pacific Co. v. Kentucky, 1911, 222 U.S. 63, 32 S.Ct. 13, 56 L.Ed. 96, it was held that Kentucky could exact a personal property tax on ships owned by a Kentucky corporation, though the ships had never been within the borders of Kentucky, where such ships, plying from port to port, had never acquired a taxable situs in any other state. This case can hardly rest upon territorial jurisdiction over the ships, which never were in Kentucky and to whose protection the laws of Kentucky rendered no contribution. Rather, the jurisdiction to tax would seem to rest upon Kentucky's jurisdiction over the person of the taxpayer domiciled there. As was observed by Mr. Justice Holmes, dissenting, in Safe Deposit & Trust· Co. v. Virginia, 1929, 280 U.S. 83, at page 97, 50 S.Ct. 59, at page 62, 74 L.Ed. 180, 67 A.L.R. 386:

"Taxes generally are imposed upon persons, for the general advantages of living within the jurisdiction, not upon property, although generally measured more or less by reference to the riches of the person taxed, on grounds not of fiction but of fact. Fidelity & Columbia Trust Co. v. Louisville, 245 U.S. 54, 58, 38 S.Ct. 40, 62 L.Ed. 145, L.R.A.1918C, 124; Kirtland v. Hotchkiss, 100 U.S. 491, 498, 25 L.Ed. 558. The notion that the property must be within the jurisdiction puts the emphasis on the wrong thing. The owner may be taxed for it although it never has been within the· State. Southern Pacific Co. v. Kentucky, 222 U.S. 63, 32 S.Ct. 13, 56 L.Ed. 96."

Since Kentucky had jurisdiction over the person of the owner in Southern Pacific Co. v. Kentucky, supra, Kentucky had power to tax the owner for the support of the government unless the tax was so outrageous as to be considered a denial of due process of law. Such a tax was not considered outrageous, when laid on the basis of tangible property situated outside the state, provided such property was not taxable elsewhere. On the other hand, where such property had acquired a taxable situs in another state, a tax laid at the domicile of the owner was regarded in Union Refrigerator Transit Co. v. Kentucky, supra, as "rather of the nature of an extortion than a tax." 199 U.S. at page 202, 26 S.Ct. at page 37, 50 L.Ed. 150, 4 Ann.Cas. 493. In other words, the factor of potential double taxation seems to have been regarded by the court as making it so unfair for Kentucky to tax the rolling stock in the Transit Co. case as to offend the Fourteenth Amendment.

In subsequent decisions the Supreme Court began to say that double taxation of intangible property was equally obnoxious. In Farmers' Loan & Trust Co. v. Minnesota, 1930, 280 U.S. 204, 212, 50 S.Ct. 98, 100, 74 L.Ed. 371, 65 A.L.R. 1000, the court said: "We have determined that in general intangibles may be properly taxed at the domicile of their owner, and we can find no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles." But there has more recently been a recession in the tide. It is apparent now that double taxation of intangibles is not in all circumstances forbidden. Curry v. McCanless, 1939, 307 U.S. 357, 363, 59 S. Ct. 900, 83 L.Ed. 1339; Graves v. Elliott, 1939, 307 U.S. 383, 59 S.Ct. 913, 59 L.Ed. 1356. The question whether the state. of the domicile has power to lay a property tax on intangibles which under the doctrine of New Orleans v. Stempel, 1899, 175 U.S. 309, 20 S.Ct. 110, 44 L.Ed. 174, and following cases, had acquired a taxable situs in another state, was expressly reserved in Newark Fire Insurance Co. v. State Board of Tax Appeals, 1939, 307 U. S. 313, 319, 59 S.Ct. 918, 83 L.Ed. 1312.

It may be argued that the recent decisions of the Supreme Court, just referred to, have undermined the basis of Union Refrigerator Transit Co. . v. Kentucky. That case seems to rest, as we have seen, on the ground that double taxation of tangibles is constitutionally objectionable, and therefore that the domicile of the owner of the chattel cannot tax where the chattel, actually present in another state, has acquired a taxable situs there. If the state of the domicile of the owner can tax intangibles, though that may result in double taxation, it may be asked why the same should not be true in the case of tangible property. It is urged that the Union Refrigerator Transit Co. case should be confined to its exact facts and held to turn on the peculiar nature of the property there involved; that railroad cars are more analogous to real property than personalty. But the doctrine of this case has not been so limited in cases that followed it. Frick v. Pennsylvania, 268 U. S. 473, 45 S.Ct. 603, 69 L.Ed. 1058, 42 A. L.R. 316.

We need not pursue these arguments, because the Supreme Court consistently, and even in its latest pronouncements, has adhered to the doctrine of the Union Refrigerator Transit Co. case so far as tangible property is concerned. Frick v. Pennsylvania, 268 U.S. 473, 489, 45 S.Ct. 603, 69 L.Ed. 1058, 42 A.L.R. 316; Safe Deposit & Trust Co. v. Virginia, 280 U.S. 83, 92, 93, 50 S.Ct. 59, 74 L.Ed. 180, 67 A.L.R. 386; Johnson Oil Refining Co. v. State of Oklahoma ex rel. Mitchell, 1933, 290 U.S. 158, 161, 54 S.Ct. 152, 78 L.Ed. 238; Great Atlantic & Pacific Tea Co. v. Grosjean, 1937, 301 U.S. 412, 424, 57 S.Ct. 772, 81 L.Ed. 1193, 112 A.L.R. 293; Connecticut General Life Insurance Co. v. Johnson, 1938, 303 U.S. 77, 81, 58 S.Ct. 436, 82 L.Ed. 673; Curry v. McCanless, 1939, 307 U.S. 357, 364, 365, 59 S.Ct. 900, 83 L.Ed. 1339.

Mr. Justice Stone, speaking for the court in the last-cited case, drew a sharp distinction, both theoretical and practical, between the taxation of tangibles and the taxation of intangibles, which have no location in space but are rights founded on relationships between persons. He said (307 U.S. at page 373, 59 S.Ct. at page 908, 83 L.Ed. 1339):

"We find it impossible to say that taxation of intangibles can be reduced in every case to the mere mechanical operation of locating at a single place, and there taxing, every legal interest growing out of all the complex legal relationships which may be entered into between persons. This is the case because in point of actuality those interests may be too diverse in their relationships to various taxing jurisdictions to admit of unitary treatment without discarding modes of taxation long accepted and applied before the Fourteenth Amendment was adopted, and still recognized by this Court as valid."

There is no intimation in the cases that the Supreme Court would now overrule the Union Refrigerator Transit Co. case. We know of no substantial ground on which the case could be overruled, without conceding the power of the domiciliary state to tax a landowner on land situated in another state. The Supreme Court has frequently pointed out the close analogy between foreign-held land and chattels permanently situated in another state and subject to the taxing power thereof. Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 204, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493; Frick v. Pennsylvania, 268 U.S. 473, 492, 45 S.Ct. 603, 69 L.Ed. 1058, 42 A.L.R. 316; Wheeling Steel Corp. v. Fox, 298 U.S. 193, 208, 209, 56 S.Ct. 773, 80 L.Ed. 1143; Curry v. McCanless, 307 U.S. 357, 363, 59 S.Ct. 900, 83 L.Ed. 1339. It is not for us to begin the process of whittling away the decision in Union Refrigerator Transit Co. v. Kentucky by the taking of distinctions and the making of refinements.

It remains to consider whether the sugar involved in the present case became subject to the taxing power of the State of New York when it was put in warehouses there and so remained for many months awaiting sale. The decided cases make it clear that New York could lay a tax in these circumstances. American Steel & Wire Co. v. Speed, 1904, 192 U.S. 500, 24 S.Ct. 365, 48 L.Ed. 538; General Oil Co. v. Crain, 1908, 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754; Susquehanna Coal Co. v. South Amboy, 1913, 228 U.S. 665, 33 S.Ct. 712, 57 L.Ed. 1015; Bacon v. People of State of Illinois, 1913, 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615; Minnesota v. Blasius, 1933, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131; cf. Carson Petroleum Co. v. Vial, 1929, 279 U.S. 95, 49 S.Ct. 292, 73 L.Ed. 626. In fact, New York did not undertake to tax. See New York Tax Law, Consol.Laws, c. 60, Section 3, Laws 1933, c. 470. But the important thing is the existence of the power. In Union Refrigerator Transit Co. v. Kentucky it did not appear that any other state had sought to tax the rolling stock. As the court said in Farmers' Loan & Trust Co. v. Minnesota, 1930, 280 U.S. 204, 211, 50 S.Ct. 98, 100, 74 L.Ed. 371, 65 A.L.R. 1000: "Southern Pacific Co. v. Kentucky, 222 U.S. 63, 32 S.Ct. 13, 56 L.Ed. 96, indicates plainly enough that the right of one state to tax may depend somewhat upon the power of another so to do." To the same effect, see Johnson Oil Refining Co. v. State of Oklahoma ex rel. Mitchell, 290 U.S. at pages 161, 162, 54 S.Ct. 152, 78 L.Ed. 238.

The judgment of the District Court is affirmed with costs to the appellee.