## County Board of Tax Sup'rs of Jefferson County et al. v. Helm.

June 16, 1944.

L. S. Grauman for appellants.

Nelson Helm for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The issue is the liability for ad valorem taxes of the right to proceeds of life insurance policies left with insurance companies outside Kentucky.

Under the provisions of ten policies on the life of the late T. Kennedy Helm, of Louisville, proceeds of the face value of $57,846.42 were retained by the several companies under a guarantee to pay the insured's widow, the appellee, Mrs. Elizabeth N. Helm, during her life, interest on the amounts at the rate of 3% per annum and such dividends as might be apportioned by the companies. She has the right under each contract to withdraw all or any part of the principal in cash, subject to the right of the company to require ninety days' notice and to limit such withdrawals to four in any year and to a minimum of $50 each. Upon the death of Mrs. Helm the principal sums, or so much thereof as may remain in the hands of the insurance companies, are payable equally to four children of the decedent and the appellee, or to the representatives of the children. Under another policy of insurance Mrs. Helm, as beneficiary, has exercised an option given her by it and left $1,057 with the insurance company on substantially similar terms. The total cash value of the property is, therefore, $58,903.42.

In recent years we have had questions of the applicability to intangible rights in trust funds located without the state of the mandate of the Constitution that all property not exempted from taxation shall be assessed at its fair cash value. Section 172, Constitution of Kentucky. In this case no question of the situs is raised since the statutes provide that the situs of intangible personal property shall be the residence of the beneficial owner. Kentucky Revised Statutes, 132.190, 134.060. It is not, however, the securities or cash itself that is sought to be assessed for ad valorem taxation but only the right in those intangibles which produce income.

We have held to be subject to ad valorem taxation the right of a resident to receive the income for life from a trust held and administered by a non-resident

trustee, the right being subject to forfeiture by a spend-thrift clause. We regarded it as a third estate, carved out of the trust, namely, the basic right in property from which the income flowed, the present value of the life estate to be valued or capitalized according to the mortality tables. Commonwealth ex rel. v. Sutcliffe, 283 Ky. 274, 140 S. W. 2d 1028; Id., 287 Ky. 809, 155 S. W. 2d 243.

The recognition of the basis or source of income as an intangible right of property subject to ad valorem taxation, and the method of its valuation, was confirmed in Evans v. Boyle County Board of Education, 296 Ky. 353, 177 S. W. 2d 137. The owner had paid and agreed to pay a large sum to Centre College in consideration of an annuity of $10,800 a year during her life.

The circuit court was of opinion that this property right falls within the decision of Button v. Hikes, 296 Ky. 163, 176 S. W. 2d 112. There the beneficiary of insurance received guaranteed interest on the proceeds left with the company during her life, but in no event was she entitled to receive or dispose of or direct the payment of the corpus except that she should survive all of her children and their descendants. She could not collect, assign, alienate, commute or pledge the principal or her rights under the contract. Since throughout the life of the Commonwealth, under several Constitutions, the Legislature had never specified or classified the proceeds of life insurance or rights arising therefrom for ad valorem taxation, and the administrative officials had never undertaken to subject the same under the general and broad language of the constitutions and the statutes, the court in a four to three decision held under the doctrine of contemporaneous construction and the historical immunity that the right from which the income or interest arose, namely, the obligation of the insurance company, was not subject to ad valorem taxation. In reaching the decision regard was had for the practical operation and effect of holding such right to be assessable, which would have been to impose a tax upon an unalienable protection which a man had made for his widow, and possibly upon insurance contracts of all kinds.

The rights of the beneficiary in the instant case are different. Here the beneficiary may call for payment of the whole sum and reduce it even to manual posses-

sion. She may subject it all to absolute disposition at will. Here is an insurance contract completely matured, payment only being suspended. Unlike the Hikes case, where the beneficiary had merely an interest in the profits of an insurance contract, the beneficiary here has a vested interest in the principal as well as in its profits. Here is a definite and certain chose in action. There is no distinction to be drawn between this and the ownership of a promissory note maturing upon demand. It is conceded by the appellee that should she exercise the right to collect the principal, the money would be taxable in her hands or if placed to her credit in a bank. We think, like a time deposit, subject to withdrawal, the fund is now constructively in her possession.

In Wilkin v. Board of Commissioners, 77 Okl. 88, 186 P. 474, the taxability of certificates issued by an insurance company by which it bound itself to pay to the beneficiary the proceeds of a life policy in installments throughout a period of years was sustained. The Oklahoma statutes, as do ours, tax all property and they classified annuities as a proper subject of taxation. The court denied the arguments of the owner that the certificates had no present value because they were not capable of being sold or assigned, and that the money evidenced by the certificates was and continued to be until the payment of each installment the property of the insurance company and therefore did not constitute property in the hands of the beneficiary. We think the taxability of the property right in the instant case is even clearer than that.

It must be admitted that the difference between this state of fact and that presented in the Hikes case is a narrow one. But the court, speaking again through a majority, is not willing to extend the doubtful construction reached in the Hikes case, that the property was not subject to assessment for ad valorem taxation, even to cover the close distinction. The property right of Mrs. Helm must, therefore, be deemed subject to ad valorem taxation even as was similar rights in the analogous cases cited, and in Commonwealth v. Madden's Executor, 265 Ky. 684, 97 S. W. 2d 561, 107 A. L. R. 1379, in which general deposits of a citizen of Kentucky in a New York bank was held to be taxable here. The reasoning of that opinion on the point in every respect justifies and requires this decision.

Wherefore the judgment is reversed for consistent proceedings.

Whole Court sitting.

Judge Sims dissenting.

I am unable to concur in the majority opinion for two reasons: First, there is no real distinction between the case now before us and Button v. Hikes, 296 Ky. 163, 176 S. W. 2d 112; and secondly, I am quite confident that the opinion in the Hikes case is correct in holding that it never was the intention of the framers of our Constitution that life insurance policies should be taxed.

In each case the widow had the right to certain income, or interest, on the principal represented by the policies, and it is the right to that income that is sought to be taxed here as it was there.

It was strongly urged by the taxing authorities in the Hikes case, as it is here, that no attempt is being made to tax life insurance policies, and that the tax gatherers are reaching only for the proceeds of the policies which remain in the hands of the insurance company after the death of the insured and before same are delivered to the beneficiary according to the terms of the policies. There is no difference between taxing an insurance policy and taxing the proceeds of that policy, for it is known by all people that life insurance is not for the benefit of the insured but for the beneficiary. The Hikes opinion convincingly demonstrates that the doctrine of contemporaneous construction clearly shows it was not the intention of the framers of our Constitution to tax life insurance policies or the proceeds thereof.

There is only one way in which the first Sutcliffe case, 283 Ky. 274, 140 S. W. 2d 1028, can be differentiated from the Hikes case, and that is the latter involves life insurance policies which are exempt from taxation under our Constitution. To my mind, this is not only a sound but a wholesome distinction. The same reasoning differentiates Evans v. Boyle County Board of Education, 296 Ky. 353, 177 S. W. 2d 137, from the Hikes case.

It is intimated by the majority opinion that the Hikes case is not sound and will be overruled the next time the question is presented. Perhaps so, as it is evident there is a present lack of stability in court de-

cisions which brought forth this remark by Mr. Justice Roberts in his dissent in Smith v. Allwright, 64 S. Ct. 757, 768:

"The reason for my concern is that the instant decision, overruling that announced about nine years ago, tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only. I have no assurance, in view of current decisions, that the opinion announced today may not shortly be repudiated and overruled by justices who deem they have new light on the subject."

Should the Hikes case be overruled, a grave mistake will be made and a great injustice done the owners and beneficiaries of more than half a million insurance policies now in force in Kentucky. It is to be hoped it will stand until this important and far-reaching question can be submitted to the people by way of a constitutional amendment, whereby they can speak directly and with certainty on the subject.

Courts seldom acknowledge that they are not immune to the consequences of their decisions, nor should they be when it comes to taxing life insurance which so vitally affects the financial security of so many of our citizens. The Hikes opinion points out that the taxes, together with interest and penalties, against such insurance as was there attempted to be taxed would consume the benefits under such policies for approximately seven years. Here, Mr. Helm died in 1939 and such tax interest and penalties will consume approximately three and a half years' income which he intended to go to his widow. It will not do to say that the tax collectors will not exact the last farthing, because it is not certain that under the law (Shipp v. Rodes, 219 Ky. 349, 293 S. W. 543), it is not their duty to do so in the event this right is taxable. Now more than ever before taxes must be treated as of paramount importance. Recently a citizen of the United States died leaving on deposit $26,521.05 in a bank at Toronto, Canada. The United States tax authorities claimed $14,741.10, those of Canada $14,009.09, leaving nothing for the heirs and leaving the decedent owing $2,229.14 in taxes.

If Mrs. Helm's right to collect interest on this insurance is subject to taxation, then the cash surrender value of every life insurance policy now in force in this

State may be taxed. And it is the duty of the taxing authorities to tax all life insurance if they tax any. It is not logical to say that here the policies had matured and the proceeds for that reason are taxable, and in the next breath say the cash surrender value of a policy is beyond taxation because the policy has not matured. By the very terms of a life insurance policy the cash surrender value thereof has matured and is payable after due notice. Indeed, it is the cash surrender value upon which the company pays annual dividends to policyholders. For the purpose of taxation, what is the distinction between annual dividends, or interest, paid on the cash surrender value of the policy and the annual interest paid Mrs. Helm on the principal of her policies? There is none.

The majority opinion here, as did the dissent in the Hikes case, says there is no distinction to be drawn between Mrs. Helm's right to this interest and her right to collect interest on a promissory note executed to her by an insurance company for money which she had loaned it evidenced by a note. But my brethren lose sight of the fact that Mrs. Helm is collecting interest on the life insurance of her deceased husband which had never left the company's hands and has never come into her possession. In KRS 297.140 and 297.150, as construed by this court in Parks v. Parks' Ex'rs., 288 Ky. 350, 156 S. W. 2d 90, 138 A. L. R. 782, there is exempt to the widow and her children the proceeds of the husband's life insurance from the claims of creditors on the theory than a man's life is no part of his assets, and his wife and little children should not be turned into the street after he had attempted to make provision for them after death through life insurance.

Wilkin v. Board of Commissioners, 77 Okl. 88, 186 P. 474, is easily distinguished from the instant case. There the policies were surrendered to the company and it issued to the beneficiary certain evidences of semi-annual payments to be made over a period of 20 years. The Oklahoma statute expressly said such annuities are subject to taxation. It is not unworthy of notice that the rate applied by the lower Oklahoma court netted the state in taxation more of the annuities than was received by the beneficiary.